number one six one six six eight a man Hardy versus the United States number one six one six eight. May it please the court. My name is Sharon Fray-Witzer, and I represent Mr. Eman Hardy. Your Honor, may I have two minutes of rebuttal? Yes. Thank you. Your Honors, it will be no surprise that I disagree strongly with the government's position in the previous case you've just heard, Darnell Moore, that it is clear that Johnson does not apply here. Given that the Johnson vagueness principle is applied to an identical provision in the guidelines, in the mandatory guidelines, given that it fixes the sentence effectively to the same degree as ACCA, given that it was hopelessly indeterminate, given that what was at issue was language like serious potential risk evaluated under a ordinary case standard which no one could apply and which resulted in years and years of litigation, both under ACCA and under the guidelines, it seems almost impossible to me to view Johnson as clearly not applying here. And I do think that's the standard. Could you explain how it fixes the sentence just the same as ACCA fixed the sentence? Well, first of all, I don't think it's our burden to show that. But certainly... What do you think it is your burden to show? That it's plausible to think it did just as much? Well, of course, inasmuch as you ask the government what standard you'd like them to apply, they'd like you to apply, I think, Evans versus Garcia, Evans is a standard under 2255H, that you must find that it clearly does not apply as you did in that case with respect to Miller and the non-life without parole sentence. So just explain why this clearly, whatever that, however you put that test, would apply here because we're comparing the fixity of the ACCA regime to the fixity of the mandatory guidelines regime which has a departure provision in it. At the very least, Your Honor, the degree of flex in the guidelines, in the mandatory guidelines, has to be less than the degree of flex in the advisory guidelines. No, but I'm not asking you to compare it to the advisory guidelines. I'm asking you to compare it to ACCA. Okay. I'm not sure you can make a one-to-one comparison, but on the mandatory guidelines side, as was elucidated in the previous argument, one of the hallmarks of departure was factual determination. The judge had to make factual determinations reviewable, and it was reviewable under a standard much more stringent than today's reasonableness standard under Gall. It had to be in keeping with the purposes articulated by the guidelines. The guidelines controlled not only the judge's decision, not only advised the judge's decision, controlled review. On the ACCA side, it's mushier than it looks. There are departures effectively under ACCA for 3553E, the safety valve provision. There are departures available for cooperation. But am I right that the kind of things that would be relevant to departure, as I can't remember entirely, but weren't necessarily related to the conduct that was being punished? They were related to sort of characteristics of the defendant? I'm not sure it was so limited. I do know the judge, I was not myself a federal defender. But I guess what I'm just saying, doesn't that matter? In other words, just imagine there was a regime of mandatory guidelines subject to departure. But the departure could be for any reason so long as it was shown by clear and convincing evidence that the reason obtained. That would suggest that it was discretionary, fixed by the statutory maximum, subject to intensive review of the discretion that was being exercised, which would just be different than a regime, let's say, that says mandatory guidelines subject to departures, but no departure for a person who commits x type of offense. That would seem like we were fixing it based on the nature of the offense. I just don't recall that the departure was fixed in that way. I don't think that the court, on review of a 2255H application, needs to get into those particulars. I think all it needs to know is that this case doesn't fit into the carve out created by Beckles from Johnson's application, and that the guidelines scheme, the mandatory guidelines scheme, was sufficiently stringent, was sufficiently non-flexible, to present to the Supreme Court in Booker a constitutional problem, although a different constitutional problem. But then how do you deal with the problem that Booker doesn't treat that defect as subject to retroactive relief? As you may know, Your Honor, contained in our petition, and I would argue it's non-frivolous, Yes, and we'll change that, but let's put that to one side. Let's assume we don't buy that argument from him. I keep coming back to what maybe the dichotomy here could be, that anything that changes the sort of minimum or maximum is fixing the sentence or unfixing the sentence, whereas anything within it may be a Sixth Amendment issue, but it's not serious enough to apply retroactively. And we have here the latter. I'm not sure I followed Your Honor's last comment, but I'm going to address what I assume is Your Honor's concern based on your questioning of previous counsel, which is trying to differentiate between Booker and Johnson for purposes of retroactivity. I think what I've had to do to understand this is to kind of step back into a world, I don't want to step back away from the microphone, but to step back into a world where Booker doesn't exist. We have to pretend Booker hasn't happened yet and all that's happening is mandatory guidelines are dictating what judges can do by way of sentence, fixing maximums and minimums, yes, with a great deal of leeway, but not entirely as much as was necessary under the advisory system made necessary by the Sixth Amendment. So you have this scheme which Booker eventually deems violative of the Sixth Amendment, but within that scheme, within that frozen world, you have something that's violative of the Fifth Amendment, this vague clause, and what you have is a fundamental due process violation in the same way that ACCA is a fundamental due process violation. You've got something that doesn't have anything to do with allocating burdens as between judge and jury as Booker does. It has to do with substance. The very rule itself announces its substance. If you deem a statute vague and you invalidate it because it's vague, you are necessarily changing the scope of that statute. You're leaving uncovered criminal behavior which would otherwise be covered necessarily. I mean, if it's vague, it's going to cover too much. If you get rid of it, it's going to cover less. So within this world, before Booker, you have a statute that's more serious perhaps than the Booker violation and much more substantive. And why is it more serious? Well, maybe serious isn't the right way to put it. They both need to be remedied, but the test of whether or not something is going to be retroactive is by whether or not it's substantive or procedural. Now, to be substantive, it doesn't necessarily have to be entirely free of procedural elements. So Miller v. Alabama was deemed retroactively applicable in Montgomery v. Louisiana, even though it was a sentencing provision. I think my time is up. I think I just want to make sure that you understand that to be substantive, it doesn't need to be perfectly procedure free, but this is clearly a substantive rather than a procedural thing. It's not allocating burdens as between judge and jury. It is instead changing the scope of the statute, and that's the test under SHERA. Thank you. Good morning again, Your Honors. Still Michael Rocker from the Department of Justice on behalf of the United States. In our briefing, we submitted that there are really three independent reasons why the Court can and should deny the application in this case and the previous case. And the first argument that we have set forth is that the Supreme Court has not yet recognized the new rule that the mandatory guidelines can be challenged as vague. Our first argument is that because the Supreme Court hasn't recognized that rule, this Court, in its gatekeeping capacity, doesn't have the authority to announce a new rule for this purpose. I haven't had a lot of time to talk about that, but I want to make clear that we're still standing by that position. What we've spent most of our time talking about here this morning is our second position, which is assuming that this Court can announce the rule that the mandatory guidelines are subject to vagueness challenges, whether the Court should recognize that rule, whether that's the correct rule, or whether, in our view, the Court should not recognize that rule. I will come back to that in a moment. The third argument, though, is the retroactivity point. And, of course, we know from Tyler v. Kane that the Supreme Court is the only entity that's authorized to make the rule retroactive. Now, the Court has already made the Johnson rule in the ACCA setting retroactive, but that's a separate question from the rule that we're talking about here, which, again, is whether or not the pre-book or mandatory guidelines are subject to vagueness challenges. Can you help me understand how the first and the third arguments can come out differently? Sure. Because I thought the key to get in as a Johnson 2 argument is that it's a fixed regime. Right? That the mandatory sentencing is fixed. Yes. And not like ACCA for purposes of this. Okay. Yes. Right? Yes. Okay. And if they can do that, then won't it just follow that since the Johnson 2 rule is a substantive rule that applies to fixed sentencing regimes, that it would apply retroactively under Welch? What's wrong with that logic? There's nothing wrong with the logic. I just think that we're viewing the issue slightly different conceptually. The question, I'm trying to break it up into that there's two component parts. What the discussion has been about is the second component part, which is Johnson 2 and Welch and whether the residual clause is in fact vague. What I'm trying to focus on is the threshold step that needs to be taken, which is the analogy to what was at issue in Beckles, which isn't whether the residual clause is vague. It's whether the residual clause can even be challenged as vague. And if the Supreme Court were to recognize that that's a new rule, if that is a substantive rule, that is not, that doesn't follow from Welch. Maybe I'm just, this is just repeating, I think, not surprisingly given that we just had the same argument 10 minutes ago, what Judge Cayado was asking about ACCA Jr. Right. They're effectively saying, and I know you disagree with it, that the mandatory sentencing guidelines are like ACCA Jr. Right. And I disagree with that. Yes. And so what's the argument as to why you're right about that? Okay. I guess the best argument I can put forward to the court is to give a case and an example. The best case, which is cited in our brief, and I always mispronounce it, it's United States v. Rodriquez with a Q from 2008. And in that case, the Supreme Court said very clearly that the top end of a mandatory guidelines range does not function as a statutory maximum. Now, that case involved a state guidelines regime, but it was a mandatory guidelines regime. And the very reason the court said is that it doesn't function as a true maximum is because courts always had a departure authority. Now, let me give an example. If a defendant had a guidelines sentence of 12 years, but the statutory maximum was 13 under a mandatory regime, if there were exceptional circumstances or if one of the many criteria in Section 5 of the guidelines, Chapter 5, was found to be met, the court had departure authority. And then the question is, well, how far can the court depart? Well, the answer is the court can depart to 13 years because that's the statutory limit. Could the court depart to 14 years? No. A court never under any circumstance has the power because a statutory limit fixed by Congress is an inviolable punishment ceiling. There are no circumstances of the offense or the offender, no matter how heinous, that would let the court go to 14 years to 13 years in a month, 13 years in a week, 13 years in a day, 13 years and one hour. That punishment ceiling is inviolable. You cannot say that about a guidelines range. The guidelines range was always constrained by the statutory limits. And that's what I think the functional difference is. Yes, the guidelines were mandatory, but that doesn't mean that they fixed sentences in the way Beckles used the term. And the two cases that Beckles cited for the proposition about fixing sentences, both involved legislative statutes. What I mean by that is statutes enacted by Congress. They were the Batchelder statute, which dealt with the firearms provision, and then, of course, in Johnson, which was ACCA. Those are statutes. They were bicamerally produced by both houses of Congress. They were presented to the President and signed. They are codified in the United States Code. The guidelines don't fit that bill. They are administrative regulations promulgated by an agency, pursuant to a delegation of authority. And Ms. Stratton makes very clear, Congress was not intending or trying to give the Sentencing Commission the power to set minimum and maximum sentences. They were to set guidelines ranges. But they're not true minima and true maxima. And that's the fundamental qualitative difference. Now, the court may not agree with us, but I think that that is a principled and logical distinction. And I think for purposes of deciding whether or not to authorize a second or successive, it's simply premature right now. Because no court, not the Supreme Court, certainly has not said that the mandatory guidelines are even amenable to a challenge. Under this view, if the mandatory guidelines, let's say the statutory maximum is 15, and under the mandatory guidelines, the range put it as 10. The range was 10 or the sentence was 10? The sentence was 10. I told you to give the sentence a 10 rather than 15. And as it happened, there was not any meaningful discretion for the district court judge to go lower than 10, because given the rules about when you could depart downward, it wouldn't apply to most defense, let's say this defendant, too. So effectively, under the mandatory regime, he was being fixed a 10-year sentence. But I understand your point is, yeah, but the statutory maximum that he was on notice of was still 15. Is your position that even in the circumstance I'm identifying, there's no vagueness problem? Yes. Well, it's not that there's no vagueness problem, it's that it can't be challenged. As I tried to say in response to my earlier question, and I apologize to your earlier question if I wasn't clear, we're not drawing defendant-specific distinctions, it's just functionally. The reason why that just seems odd is that it just seems so, I don't know, simple to see that as having, there's an outer maximum, but as to a subset of people, there's also an inner maximum, which is just fixed, and there's nothing the district court can do about it, right? It has to give that 10-year sentence. And so I don't understand what the principle would be that suggests that given that the district court must impose the 10-year sentence, it matters that there's some 15-year sentence that he, in theory, could have given. Because I think the point that I'm trying to communicate is that we're focusing on qualitative structural differences between the guidelines regime as a whole, not in an individual case. Your Honor's hypothetical, but what about a hypothetical where the court had plenty of departure authority, it was the most heinous case the court had ever seen, and it wanted to go above 15. Well, I mean, that's the point, is why on a vagueness, constitutional due process vagueness challenge, why are we looking at this facially rather than as applied? I don't fully understand that. Well, I'm not, again, I'm not trying to, I don't mean to be suggesting, this is not sort of First Amendment over-breath facial as applied. No, but just so you know, constitutional analysis, when you strike something down, usually you have to do it as applied instead of on its face. I just don't really grasp why, in this case, we suddenly are seeming to not pay any attention to whether this person's really subject to a maximum of the mandatory guidelines or not. That's certainly not the way Beckles viewed the issue. Well, no, but Beckles wouldn't confront it, because as to everybody. I understand. Yeah, so they did it just the right way, but now when you turn to a mandatory, it'd be different, right? Again, I don't You wouldn't confront it under Johnson, too, because you had a true statutory maximum. And I think the use of the word true is what gets it. We've heard words like the mandatory guidelines effectively. It's just sticking with my point. We're trying to figure out whether this person suffered a constitutional harm. No, we're trying to figure out whether the statute is unconstitutional. As to this person. Well, I respectfully disagree. I don't think we're doing it on a case-by-case. Our position that we're trying to say is not, you look at the facts and circumstances of every single defendant. Remember, this is a secular successive application. We're not dealing with the merits. We're not on a First 2255. But all the discussion here seems to be treating this as though it's sort of plenary and it's sort of open season to reconsider everything. Congress deliberately made these secular successives difficult. It just seems to me strange that the government would say he can't get the benefit of a constitutional rule because discretion was available without you making the case that discretion was available to him. I think in this juncture of the proceedings, it's the defendant's burden to come forward and show I mean, I think we're sort of talking a little bit of cross purposes, but I'm not aware of any principle of law that would say that the government has any obligation at this point to show this or that. I mean, maybe the defendant wants to come forward and say, look, in my case, you know, the district court had no discretion, or I move for a departure, but the court denied it. But I don't think that's, I think we're looking at this sort of structurally as two different categories. There's the guidelines box, which really has sort of a top half and a bottom half. There's the mandatory and the advisory, and then there's the bottom half, which is the ACCA. It's just been qualitatively, it's difficult to say that the guidelines fix a sentence in the way Beckles used that term. When the Supreme Court talks about fixing a sentence, to be precise, it means fixing either the maximum or the minimum. I don't think that Beckles drew that distinction, Your Honor. Not Beckles, but the Supreme Court, in which anything that raises a jury, for example, has to find facts that raise the minimum sentence. Right. The Supreme Court has held that. As a Sixth Amendment matter, yes. Yes. So, in other words, we could have an act that doesn't touch the maximum, but as Judge Barron says, effectively, in a particular case as applied, keeping in mind your argument that this petitioner hasn't made out that case, but we could have a case where, as applied, the mandatory guidelines do fix the minimum by raising it from the statutory minimum. But, just as there's a power to depart upwards, there's also powers to depart downwards. But Judge Barron was postulating a case in which there was no effective ability as applied. Right. Sure. Those cases, we can certainly hypothesize there may be cases where there was plenty of room for the court to depart downward. All we're trying to, really, I feel like maybe my briefing is overcomplicated. In our view, just functionally, the way the guidelines operate, they're not statutes and they don't determine the punishment because, yes, we can hypothesize cases where they set the sentence, but that's not, I don't think that's really what Beckles was getting at when we talked about fixing, because they don't constrain, they don't set the outer boundaries of the court's discretion. In particular cases, they may operate that way, but structurally, the way they're designed, the way they're enacted, the fact that they're not U.S. Code products, they're not statutes, they're administrative regulations, they're just qualitatively different. And so for that reason, and because we don't think that the Supreme Court has ever resolved this question, we just think it's premature that the court should deny these applications even when the issue gets to the Supreme Court and they decide the question. And I understand we had a colloquy about the time limits, and I know that I may be overreaching here, but I know that the counsel in the first case was saying that the government switched positions. No, we haven't. We've been consistent throughout. We believe that the ACCA cases present a fundamental miscarriage of justice. Sentencing someone beyond legislative authorization is a condition that we will waive those procedural barriers. In the guidelines context, we don't believe, rightly or wrongly, but our position has been that the guidelines are qualitatively different. Okay? If a court were to say that the mandatory guidelines are no different than ACCA, then the government would consider doing that. And this is not a hall of promise. We're not switching positions. We're trying to be faithful and consistent to the positions that we've taken, but also respect the fact that the law is constantly changing. Beckles has changed the calculus. There may be some future case that changes the calculus. And if and when that future case comes down and says, look, the mandatory guidelines can be challenged as vague, defendants will be able to come in and file an application, and if it's granted, then they have one year from the date of that decision to file their motion in the district court. We're not trying to bait and switch. We're trying to be fair and be principled, and I'm sorry that it's coming across to the defense bar that we're not being principled, but I think that we are, and our positions have been well thought out. This is not me up here speaking. I'm speaking on behalf of the government, and I'm speaking on behalf of the people who are transposing these problems. So we just think it's premature. Thank you. Your Honors, I have no trouble whatsoever telling this Court that I believe that if the Supreme Court were to someday rule that one can apply to figure out whether you have a new rule other than simply applying the same principle, it's whether it's dictated by precedent. I think that rule would be very clearly dictated by the precedent of Johnson. So I don't think that that's an issue. Likewise, I think if again following on, I believe, Judge Barron's question, if Beckles were deemed to extend to mandatory guidelines, I think that would be a new rule. Can I ask you this one thing that just caught me up short in Beckles itself? There's this passage. It says the guidelines do not regulate the public by prohibiting any conduct or by quote establishing minimum and maximum penalties for any crime, unquote, citing the strata, which of course is during the mandatory period. And then the parenthetical is sentencing guidelines do not bind or regulate the primary conduct of the public. So that just seems not limited. I understand that they still know what to do about it because they make this point about we're not saying anything about the mandatory guidelines. But here at the crucial moment right before they turn to Justice O'Mara's concurrence, they have this sweeping statement about the guidelines in which their proposition is based on the strata, which was when the guidelines were mandatory. So how am I supposed to square that? If what you're suggesting is that Beckles can be read ambiguously, I don't agree. I think they've used advisory guidelines. They used the word advisory ten times. I counted. Twice in the first paragraph. Once in the last paragraph. It's just the quote. There is the quote in the strata itself that they're quoting. And the strata is describing a mandatory regime. I can't speak to which parts of the strata are still good law. I'm certainly not prepared to do it today. I can say that if this court needs authority for the degree to which the mandatory guidelines were binding, we need look no further than Booker, advisory, and Beckles itself. Beckles itself elsewhere calls the mandatory guidelines binding. And I think with respect, I know I'm over time, the government is taking the difference between congressional action and the sentencing guidelines a little too far. The sentencing guidelines are of course approved by Congress. They're not as distant from legislation as the government is saying. And I would feel remiss if I left the podium without speaking on behalf of my client who has been waiting since Welch for relief and who has, I believe, been entitled to walk since Welch. And I believe he should get his day in court not only under 2255H but under the suspension clause itself. I think 2255H needs to be interpreted with that in mind. And I ask you for relief. Thank you.